**CARY OIL CO., INC., et al., Plaintiffs,**

v.

**MG REFINING & MARKETING, INC., et al., Defendants.**

**No. 99 CIV. 1725(VM).**

United States District Court, S.D. New York.

April 28, 2003.

---

Richard G. Tashjian, Tashjian & Padian, New York, NY, for plaintiffs.

Robert B. Bernstein, Kaye, Scholer, Fierman, Hays & Handler, L.L.P., New York, NY, for defendants.

### DECISION AND ORDER

MARRERO, District Judge.

Before the Court are ten motions in limine (the "Motions") submitted by Plaintiffs in connection with the trial of this matter, scheduled to begin on May 5, 2003.

As discussed in the Statement of the Court Regarding Certain Motions in Limine of Plaintiffs, dated April 28, 2003, which is attached hereto and incorporated by reference herein, the Court denies five of the Motions, grants three of the Motions, and grants in part and denies in part two of the Motions. Accordingly, it is hereby

**ORDERED** that the Plaintiffs' Motion to Exclude Evidence and Argument Regarding MG's Illegality Defense or to Enforce the Flexie Without Paragraph 16 is denied; and it is further

**ORDERED** that the Plaintiffs' Motion to Exclude Evidence and Argument on the Beliefs and Statements of Salesmen is denied; and it is further

**ORDERED** that the Plaintiffs' Motion to Exclude Evidence and Argument on the Motivations, Communications, and Reasons Behind Plaintiffs Filing the Instant Lawsuit is granted; and it is further

**ORDERED** that the Plaintiffs' Motion to Preclude Admission of Unrelated Arbitration Decision is granted in part and denied in part; and it is further

**ORDERED** that the Plaintiffs' Motion to Exclude Evidence and Argument Relating to Alleged Malfeasance and Unauthorized Acts of the Former President of MGRM is granted in part and denied in part; and it is further

**ORDERED** that the Plaintiffs' Motion to Exclude Evidence and Argument on the Statute of Frauds is denied; and it is further

**ORDERED** that the Plaintiffs' Motion to Exclude Evidence and Argument on Failure of Consideration is granted; and it is further

**ORDERED** that the Plaintiffs' Motion to Exclude Any Argument or Evidence That MGRM Did Not Breach the Flexies is denied; and it is further

**ORDERED** that the Plaintiffs' Motion to Exclude Evidence and Argument Concerning Former Plaintiffs or Other MG Customers is granted; and it is further

**ORDERED** that the Plaintiffs' Motion to Exclude Evidence of Plaintiffs' Accounting Practices and Whether Premiums Were Paid on the Flexies is denied; and it is finally

**ORDERED** that the parties shall initiate a conference call with the Court to discuss all outstanding pre-trial matters on Tuesday, April 29, 2003 at 1:15 p.m.

**SO ORDERED.**

ATTACHMENT

### SUMMARY DECISIONS OF THE COURT REGARDING CERTAIN MOTIONS IN LIMINE OF PLAINTIFFS.

### I. MOTION TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING MG'S ILLEGALITY DEFENSE OR TO ENFORCE THE FLEXIE WITHOUT PARAGRAPH 16

Plaintiffs' motion is denied.

■ With regard to MG's illegality defense, the Court notes two considerations. First, in *In re: MG Ref. & Marketing, Inc.*, No. 94 Civ. 2512(SS), 1997 WL 23177 (S.D.N.Y.1997), 1997 U.S. Dist. LEXIS 444, Judge Sotomayor held that Paragraph 19(c) of the flexie contracts (the "Contracts") does not waive a claim of illegality because "public policy dictates that the Court refrain from enforcing [illegal] agreements." *Id.* at *8. Second, despite what Plaintiffs allege are changes to public policy—as reflected by the enactment of the Commodity Futures Modernization Act ("CFMA")—since Judge Sotomayor's ruling, this Court has already ruled in this case concerning a similar issue that the "presumption against retroactivity" applies to provisions of the CFMA that might " 'eliminate a defense' to a breach of contract action and 'therefore change[ ] the substance of the existing cause of action for ... defendants by attach[ing] a new disability, in respect to transactions or considerations already past.' " *Cary Oil Co., Inc. v. MG Refin. & Marketing, Inc.*, 230 F.Supp.2d 439, 457 (S.D.N.Y.2002).

■ Concerning the severability of Paragraph 16, the Court finds the following points compelling. First, in determining whether a contract is severable or entire, "the primary factor to consider is the intent of the parties as determined by

a fair construction of the terms and provisions of the contract itself, by the subject matter to which it has reference, and by the circumstances existing at the time of contracting." *Mun. Capital Appreciation Partners I, L.P., v. Page,* 181 F.Supp.2d 379, 384 (S.D.N.Y.2002). Second, because intent of the parties is a crucial element, the Court does not feel that, on the eve of trial, it is appropriate for the Court to usurp the jury's role in evaluating the totality of the evidence and determining whether the parties intended, based on the circumstances existing at the time of contracting, to create a Contract that could exist despite the elimination of the blowout provision.

Indeed, one of the questions that the jury must answer is whether Plaintiffs viewed the Contracts as speculative instruments, or as fuel delivery contracts or risk management tools to hedge against possible problems with other fuel delivery contracts. The jury's answer will also allow it to determine whether the parties intended the Contracts to remain valid despite the loss of what could be viewed as a crucial provision of the Contract.

## II. *MOTION TO EXCLUDE EVIDENCE AND ARGUMENT ON THE BELIEFS AND STATEMENTS OF SALESMEN*

Plaintiffs' motion is denied, for the reasons expressed by the Court in more detail at the pre-trial conference held on the record on April 23, 2003.

## III. *MOTION TO EXCLUDE EVIDENCE AND ARGUMENT ON THE MOTIVATIONS, COMMUNICATIONS, AND REASONS BEHIND PLAINTIFFS' FILING THE INSTANT LAWSUIT*

Plaintiffs' motion is granted.

■ Defendants wish to introduce such evidence and argument to support certain affirmative defenses. The Court has barred three of these defenses (equitable estoppel, waiver and rescission) as a matter of law based on prior rulings in this matter at the summary judgment phase. With regard to the two remaining affirmative defenses (illegality and release), the Court is persuaded that Defendants will be able to argue these defenses without needing to introduce evidence and argument relating to the motivations of Plaintiffs in bringing the instant lawsuit.

Moreover, such evidence would be distracting to the jury, focusing them on the irrelevant issue of why the Plaintiffs may have filed the lawsuit. The Court is not persuaded that such an issue has a direct bearing on the illegality of the Contracts or whether or not Plaintiffs signed a release that barred their claims. Indeed, the Court believes the "probative value [of such evidence] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Fed.R.Evid. 403.

## IV. *MOTION TO PRECLUDE ADMISSION OF UNRELATED ARBITRATION DECISION*

Plaintiffs' motion is granted in part, and denied in part.

■ The Court is persuaded that the decision issued by a panel of arbitrators in an employment dispute between Defendants and two of its former employees, W. Arthur Benson and William Benson (the "Arbitration Decision") could, if introduced in full to the jury, have a prejudicial effect on the jury's deliberations, creating an impression that an official decision-maker found the Bensons to be negligent in their fiduciary duties as employees. Such an impression could encourage the jury to make a decision on how much blame to

assign to Defendants based on the arbitration panel's findings, not on the jury's own deliberations. Therefore, Defendants will not be allowed to introduce the Decision as a trial exhibit, nor to introduce deposition testimony from cross-examination of the Bensons that essentially serves as a backdoor means to read the arbitration panel's hearsay and unduly prejudicial findings into the record of this case.

However, insofar as Defendants seek to introduce such deposition testimony, assuming a proper foundation for it exists, to demonstrate bias by any of the Bensons against Defendants or to raise questions of the Bensons' credibility in their testimony regarding Defendants, the ·evidence may be admitted. In addition, the Court will permit relevant discussion of the Decision only if Defendants lay the proper foundation to introduce any portion of the Arbitration Decision as it bears upon the bias or credibility of the Bensons.

## V. *MOTION TO EXCLUDE EVIDENCE AND ARGUMENT RELATING TO ALLEGED MALFEASANCE AND UNAUTHORIZED ACTS OF THE FORMER PRESIDENT OF MGRM*

Plaintiffs' motion is granted in part, and denied in part.

■ The Court is not persuaded that all evidence and argument relating to the actions of Arthur Benson ("Benson") should be excluded. As Defendants note, certain elements of Plaintiffs' veil-piercing argument will require Plaintiffs to prove and the jury to find that MGAG controlled and dominated the decision by MGRM to enter into the Consent Order and that in doing so it employed improper means. This issue necessarily involves questions of what actions Benson took and whether those actions were known and approved of by executives of MGAG and/or MG Corp.

However, consistent with its ruling regarding the permissible use of portions of the Arbitration Decision for limited purposes, the Court is not persuaded that Defendants should be allowed to introduce any findings from that proceeding that show Benson was terminated by MGRM for gross negligence. Moreover, the Court is not inclined to permit Defendants to engage in a debate over whether Benson's business judgment was good or bad. Thus, the Court will limit any discussions of Benson's actions to those that directly involve the relationship between MGAG and MGRM as it pertains to and informs the veil-piercing test, as previously defined by this Court.

## VI. *MOTION TO EXCLUDE EVIDENCE AND ARGUMENT ON THE STATUTE OF FRAUDS*

Plaintiffs' motion is denied.

■ The Court is persuaded that Defendants should be permitted to argue that some Contracts with certain Plaintiffs were never binding because the Contracts were not signed and returned by the Plaintiffs. New York courts have consistently held that "if parties do not intend to be bound by an agreement until it is in writing and signed, then there is no contract until that event occurs." *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir.1984). To determine such intent, courts look to four factors: "(1) whether there has been an express reservation of the right not to be bound until a writing is executed; (2) whether there has been partial performance; (3) whether any terms of the alleged agreement remain to be negotiated; and (4) whether the disputed agreement is the type of contract that is ordinarily committed to writing." *Stockalert, Inc. v. Nasdaq Stock Market, Inc.*, No. 95 Civ. 9335(JFK), 1998 WL 556036, at *9 (S.D.N.Y.1998). The Court is satisfied

that Defendants should be permitted to introduce evidence to the jury in order to prove that these factors demonstrated an intent by both parties not to be bound by the Contracts unless they were signed, and that some Plaintiffs did not sign the Contracts as necessary to manifest this intention, thus making any such Contracts invalid.

## VII. *MOTION TO EXCLUDE EVIDENCE AND ARGUMENT ON FAILURE OF CONSIDERATION*

Plaintiffs' motion is granted.

■ The Court agrees with Judge Sotomayor that " § 2 of [the flexie contracts] unambiguously places an obligation on each Customer to take delivery sometime within the five or ten year terms set by the individual instruments." *MG Ref. & Marketing, Inc. v. Knight Enter., Inc.,* 25 F.Supp.2d 175, 181 (S.D.N.Y.1998). Thus, the Court is persuaded that when Plaintiffs entered into the Contracts, they assumed an irrevocable obligation to purchase petroleum products at some point, and that this obligation satisfies the legal requirement of consideration.

■ Defendants argue that this obligation was in fact "illusory" because (1) "it was a virtual certainty that futures prices would spike during the contract term" and allow Plaintiffs to blow out their contracts and (2) even if such a spike did not happen, MGRM had told Plaintiffs that it would roll over the Contracts so that Plaintiffs would never have to take delivery. (MG Defendants' Opposition to Plaintiffs' Motion in Limine to Exclude Evidence and Argument on Failure of Consideration, dated Apr. 11, 2003, at 2.) However, an oil price spike was an outside event uncontrollable by either party, and while it is possible that Plaintiffs may have thought that a price spike would happen, they had to enter into the Contracts with the knowledge that a spike in oil prices during the term of the Contracts was not an inevitable event. Thus, their promise to take delivery was not entirely illusory.

■ In addition, Defendants' purported promise to roll over the Contracts to prevent Plaintiffs from having to take delivery is speculative, unsupported by written documentation, and, even if it did exist, could have changed if the personnel that made the alleged promise left MGRM during the term of the Contracts. Thus, the Court is not persuaded that Defendants' alleged oral promises, which were supported only by the word of MGRM personnel who may not have been employed at MGRM long enough to enforce such promises, are sufficient to demonstrate an illusory promise as a matter of law.

## VIII. *MOTION TO EXCLUDE ANY ARGUMENT OR EVIDENCE THAT MGRM DID NOT BREACH THE FLEXIES*

Plaintiffs' motion is denied.

■ The Court has already ruled that the Consent Order may be introduced at the trial to enable the jury to understand why Defendants entered into the Consent Order and what the Consent Order meant to the future of the Contracts. In the same ruling, the Court noted that for Plaintiffs to prove their veil-piercing argument, they will have to show both domination by MGAG and/or MG Corp. of MGRM's decision to enter into the Consent Order and that such domination was used to commit a fraud or wrong, such as a breach of a legal duty, that injured Plaintiffs.

To instruct the jury at the outset that MGRM's entry into the Consent Order constituted a breach of the Contracts would disrupt the Court's prior ruling and deny Defendants the opportunity to argue

that their inability to perform was forced upon them by order of a governmental entity and that therefore they did not intentionally breach a legal duty or commit a wrong, fraud or dishonest and unjust act. As the Court previously ruled on summary judgment, the record presents a genuine issue of material fact as to whether MGAG or MG Corp. used its alleged domination to cause MGRM to breach the Contracts, and the Court is not inclined to usurp the jury's role in evaluating Defendants' motivations in entering into the Consent Order and deciding whether or not such an entry constituted a legal breach.

The Court notes that in a previous ruling, it precluded Defendants from offering an affirmative defense of agreement to rescind. Thus, Defendants will be unable to assert that certain Contracts implicated in their proposed affirmative defense were rescinded and that no breach occurred as a result.

## IX. MOTION TO EXCLUDE EVIDENCE AND ARGUMENT CONCERNING FORMER PLAINTIFFS OR OTHER MG CUSTOMERS

Plaintiffs' motion is granted.

■ The Court is persuaded that evidence concerning statements made by former plaintiffs or other MGRM flexie customers who are not a party to the instant lawsuit is inadmissible both because of the nature of the statements Defendants seek to introduce and the manner in which they were procured. While the Court has ruled that certain statements made directly by the MGRM salesmen to their customers, including former plaintiffs in this action, are admissible, the Court is persuaded that statements made by former plaintiffs themselves or other such customers, in affidavits given in connection with other proceedings, about what the MGRM sales-

men may have said in marketing the Contracts constitute inadmissible hearsay.

Defendants contend that these statements are admissible as statements against pecuniary interest, but the Court is not satisfied that the record is sufficiently clear as to why the former plaintiffs or customers made such statements in prior proceedings or whether they then reasonably contemplated that such statements would adversely affect their pecuniary interests. This lack of clarity is worsened by the fact that Defendants intend to introduce such statements via affidavits and/or deposition testimony, which makes it nearly impossible to fully understand the declarants' state of mind or to ascertain their purpose at the time they made the statements.

The Court notes that this ruling does not alter its previous ruling allowing statements made directly by the MGRM salesmen themselves as evidence of a consistent MGRM business policy or practice carried out by the Company's employees, even if such statements were made to former plaintiffs or other MGRM flexie customers who are not parties to the instant lawsuit.

## X. MOTION TO EXCLUDE EVIDENCE OF PLAINTIFFS' ACCOUNTING PRACTICES AND WHETHER PREMIUMS WERE PAID ON THE FLEXIES

Plaintiffs' motion is denied.

■ With regard to whether or not Defendants should be allowed to introduce evidence that Plaintiffs failed to list the Contracts as contingent liabilities on their financial statements, the Court is persuaded that Defendants should be permitted to elicit testimony from certain Plaintiffs that they understood that the Contracts represented contingent purchase obligations, that they had been told by their accountants that the Contracts should be record-

ed in their respective company's financial statements as contingent liabilities, and that they never so recorded the Contracts. Such evidence could provide the jury with insight into certain Plaintiffs' intentions regarding the Contracts, one of the central factual issues in dispute in this litigation that the jury will be called to resolve. The fact that Plaintiffs had been appraised by outside counsel that the Contracts should be accounted for in a specific way, and yet did not follow that advice, may provide evidence of whether Plaintiffs actually anticipated utilizing the Contracts in a certain manner.

The Court is not persuaded that expert testimony on this point is necessary as long as Defendants plan to elicit such evidence through questioning of employees of the Plaintiffs who were in charge of or worked on the Plaintiffs' financial statements. Most if not all such employees, by virtue of their corporate duties, will be familiar with standard accounting practices in the Plaintiffs' field, and can testify as to typical practice for their employer or in the industry—insofar as they may qualify by training or experience to do so—in accounting for certain liabilities. Through cross-examination, Plaintiffs can rebut Defendants' line of questioning by eliciting testimony from the employees that standard practice did not require the Contracts to be accounted for as contingent liabilities, nor were the Plaintiffs required by law or custom to follow all of their accountants' advice.

With regard to whether or not Defendants should be allowed to introduce evidence concerning whether Plaintiffs paid premiums on the Contracts, the Court previously ruled that evidence and argument on failure of consideration should be excluded. As a result, evidence on premiums is unnecessary for the purpose of arguing about the issue of failure of con-

sideration. Moreover, the Court is not persuaded that the lack of any payment by Plaintiffs on the Contracts is relevant to Plaintiffs' damages. The Court is satisfied that the Contracts had value for the Plaintiffs, either in the fuel delivery option or the blowout option, although the question of how that value should be measured if damages are to be awarded to Plaintiffs will be left to the jury to decide based on the testimony and evidence that it considers. Thus, Defendants will not be permitted to introduce evidence, for purposes of damages determination, concerning whether premiums were paid by Plaintiffs on the Contracts.